[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15371
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 16, 2011
JOHN LEY
CLERK

Agency No. A088-380-419

ZENG YU LIN,
JIAN PING GAO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 16, 2011)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Zeng Yu Lin and her husband Jian Ping Gao seek review of the Board of Immigration Appeals's ("BIA") opinion affirming the Immigration Judge's ("IJ") denial of Lin's application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture ("CAT").[1] On appeal, Lin challenges the finding that she failed to show a well-founded fear of persecution based on her violation of China's one-child family planning policy.[2] After review, we deny the petition.[3]

To establish eligibility for asylum, an alien must, with specific and credible evidence, show either past persecution or a "well-founded fear" of future persecution on account of a statutorily listed factor, which includes political opinion. Immigration and Nationality Act ("INA") § 101(a)(42), 8 U.S.C. §

[1]On appeal, Lin does not challenge the denial of her request for CAT relief and thus has abandoned it. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[2]Lin's asylum application listed her husband Gao as a derivative beneficiary. Although our opinion refers to Lin, our holding as to the asylum claim applies equally to Gao. However, we deny Gao's withholding of removal claim because "there are no derivative benefits associated with a grant of withholding of removal." See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007).

[3]Where, as here, the BIA issued its own opinion, but "explicitly agreed with several findings of the immigration judge, we review the decisions of both the Board and the immigration judge as to those issues." Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010). We review the determination that an alien is statutorily ineligible for asylum or withholding of removal under the "highly deferential" substantial evidence test. Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). We will reverse "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009) (quotation marks omitted).

2

1101(a)(42); 8 C.F.R. § 1208.13(a)-(b); <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1230-31 (11th Cir. 2005).[4]  Government-ordered forced sterilization or persecution for refusing to undergo such a procedure is "persecution on account of political opinion."  INA § 101(a)(42)(B); 8 U.S.C. § 1101(a)(42)(B).

Lin's asylum application does not allege past persecution, but alleges only a well-founded fear of future persecution.  Specifically, Lin clams that if she returns to her home village of Shang Yang Village, Shou Zhan Town, Chang Le City in Fujian Province, either she or her husband will be forcibly sterilized and fined because they already have two children who were born in the United States.

To establish a well-founded fear, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable."  <u>Al Najjar v. Ashcroft</u>, 257 F.3d 1262, 1289 (11th Cir. 2001).  The applicant must present "specific, detailed facts showing a good reason to fear that he or she will be <u>singled out</u> for persecution."  <u>Id.</u> at 1287 (quotation marks omitted).

---

[4]Similarly, an applicant for withholding of removal must show it is more likely than not that she will be persecuted on a protected ground.  <u>Mendoza v. U.S. Atty' Gen.</u>, 327 F.3d 1283, 1287 (11th Cir. 2003); 8 C.F.R. § 208.16(b).  Because the standard for establishing withholding of removal is higher than the standard for establishing asylum, an applicant who fails to meet her burden of proving asylum eligibility necessarily fails to establish entitlement to withholding of removal.  <u>See</u> <u>D-Muhumed v. U.S. Att'y Gen.</u>, 388 F.3d 814, 819 (11th Cir. 2004).

The BIA has determined that asylum claims by Chinese nationals who fear future sterilization based on China's one-child policy must be evaluated on a case-by-case basis. In re J-H-S, 24 I.&N. Dec. 196, 201 (BIA 2007), pet. for review denied sub nom., Shao v. Mukasey, 546 F.3d 138 (2d Cir. 2008). To demonstrate that she has an objectively reasonable fear, the alien must show: (1) "the details of the family planning policy relevant to [her]" (2) "the alien violated the policy"; and (3) "the violation of the family planning policy would be punished in the local area in a way that would give rise to an objective fear of future persecution." Id. at 198-99; see also INS v. Cardoza-Fonseca, 480 U.S. 421, 440, 107 S. Ct. 1207, 1217 (1987) (stating that, in filling in the gaps left by Congress as to the concrete meaning of the term "well-founded fear," "the courts must respect the interpretation of the agency" (quotation marks omitted)).[5]

Here, the IJ found, and the BIA agreed, that Lin had not shown an objectively reasonable fear of forced sterilization or economic penalties rising to the level of persecution. Substantial evidence supports that finding. The record contains evidence that Lin would not be considered to be in violation of China's

---

[5]Lin does not argue that the BIA's three-part test is an unreasonable interpretation of the term "well-founded fear" in INA § 101(a)(42), 8 U.S.C. § 1101(a)(42)(A), to which we should not apply Chevron deference.

one-child policy and that, even if she was, she would be not punished by local officials in a way that would rise to the level of persecution.[6]

First, the background documentation indicates that although forced sterilization is illegal in China, some cases have occurred. Enforcement of the one-child policy varies from place to place, with the policy more strictly enforced in the cities. Fujian Province, in particular, requires unspecified remedial measures, and one parent is often pressured to undergo sterilization. American consular officials reported that in Fujian Province there is coercion through public and other pressure, but not physical force. The State Department's 2007 Profile of Asylum Claims and Country Conditions for China ("Country Profile") indicated that in 2006 there were some reports of forced sterilization in Fujian Province, but that Chinese officials claimed these were rare, unsanctioned cases of "overzealous officials exceeding their authority."

Second, evidence in the record indicates that U.S.-born children of Chinese couples who return to Fujian Province are not counted under China's family-

_____

[6]We reject Lin's argument that the IJ and the BIA did not consider all of the evidence submitted or failed to adequately explain their decisions. See Ayala, 605 F.3d at 948 ("The Board and the immigration judge are not required to address specifically each claim the petitioner made or each piece of evidence the petitioner presented, but they must consider the issues raised and announce their decision in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted." (quotation marks and brackets omitted)). The IJ and the BIA considered Lin's individualized evidence and concluded it was insufficient because it either related to individuals who were not similarly situated or was entitled to little weight.

planning policy as long as the parents do not enter the children into the household registry. Specifically, the 2007 Country Profile stated that U.S. officials in China were unaware of a national or provincial policy mandating the sterilization of at least one partner of a couple who violated the family planning policy by giving birth to children abroad. In an October 2006 letter, the Fujian Province Population and Family Planning Committee (the "FPPFPC") advised the U.S. Consulate General that: (1) children born abroad are not considered permanent residents of China and, thus, would not be counted under the one-child policy if the children are not entered in the household registry; (2) under Fujian Province regulations, there are no forced sterilizations; and (3) Villagers' Committees do not have the authority to "make decisions on family planning disposition" and "[a] certificate/proof issued by said Committee should be deemed ineffective." In a follow-up letter dated January 2007, the FPPFPC clarified that children of a Chinese citizen who were born overseas but who did not establish permanent residency in China (i.e., not entered in the household registery) would not be counted even if the children were "administered as a Chinese citizen."[7] However,

[7]Under Chinese law, a U.S.-born child is considered a Chinese citizen unless the parents are lawful permanent residents or citizens of the United States.

the 2007 Profile indicates that such children would be ineligible for free public education and medical care and other social benefits.

The particularized evidence Lin submitted does not compel a conclusion to the contrary.[8]  Lin submitted a statement from her father-in-law that the Shang Yang Village Committee required villagers to be sterilized after giving birth to a second child, regardless of where the children were born, as long as the parents had no legal status in a foreign country.  Lin also submitted an April 2008 certificate from the Shang Yang Village Committee reiterating this policy.

However, the IJ and the BIA gave this evidence little weight because (1) the statements of Lin's family members were unauthenticated copies that were not supported by independent evidence and the writers were not available for examination; and (2) the 2007 Country Profile indicated that statements from village committees should be considered invalid.  The latter finding is supported by the 2007 Country Profile, which stated that "[d]ocumentation from China, particularly from Fujian Province, is subject to widespread fabrication and fraud,"

_____

[8]Much of Lin's particularized evidence consisted of letters and statements from family members who said they were sterilized or fined after having two children born in China.  These statements do not address the question of whether Lin, whose children were born in the United States, would be sterilized or fined.  Additionally, many of the statements relate to events that occurred as much as a decade before Lin's asylum hearing.

and by the FPPFPC's October 2006 letter stating that village committee certificates concerning family planning should be deemed ineffective.

Lin also submitted letters from two Chinese nationals who said they were forcibly sterilized by Chang Le City family planning officials after they had a second child born abroad, one child born in Japan and the other child born in Romania. The IJ and the BIA discounted this evidence because Lin had not shown these Chinese nationals were similarly situated. Notably, these Chinese nationals were not returning to China with U.S.-born children and there is no evidence as to whether the children born in Romania and Japan had been entered into the parents' households registries before their parents' sterilization.

Substantial evidence also supports the finding that Lin did not show an objectively reasonable fear of economic persecution. Fines may amount to persecution if they cause a "severe economic disadvantage," considering the alien's net worth, other sources of income and the conditions of the local economy. See In re T-Z-, 24 I.&N. Dec. 163, 173-74 (BIA 2007) (quotation marks omitted). To satisfy the severe economic disadvantage standard, the fine should reduce the alien "to an impoverished existence." Id. at 174.

As discussed above, there is evidence in the record that indicates Lin's U.S.-born children would not be counted toward China's family planning policy so long

as Lin did not establish her children's legal permanent residence in China by entering them in her household registery. This evidence suggests Lin would not be fined at all, although her children would not be eligible for free medical care and education.

However, even assuming Lin's children would be counted and Lin would be fined, the evidence in the record does not compel a conclusion that the fine would reduce her to an impoverished existence. According to Fujian Province's family planning regulations, Lin, as a farmer, would be fined the amount of one-year's average net income. And, she could apply for administrative review or initiate a lawsuit if she disagreed with the fine.

The 2007 Country Profile states that: (1) fines vary throughout the provinces; (2) the net income per capita for rural households in Chang Le City was approximately 4,815 RMB, or about $580; (3) couples unable to pay the fine at once may be allowed to pay in installments; and (4) local family planning committees can sue couples who refuse to pay the fine, but cannot garnish their wages.[9]

---

[9]Although Lin testified that she would be fined 40,000 RMB, she based this on a fine table for a different town. Furthermore, the statements from Lin's relatives in Shang Yang Village claimed they were fined only 6,000 and 15,000 yuan for having two children.

9

Lin testified that her family's gross income would be about 10,000 RMB a year. However, Lin did not present any evidence of her family's net income, the figure needed to determine the size of the potential fine, or evidence of her net worth or the economic conditions in Shang Yang Village, information needed to evaluate Lin's personal financial circumstances in relation to the fine. Further, Lin admitted that while making 3,000 RMB a year in China, she was able to pay a smuggler $20,000 up front to smuggle her into the United States, which suggests a fine of less than 5,000 RMB would not result in an impoverished existence. This record does not compel a conclusion that Lin's fear of economic persecution is objectively reasonable.

**PETITION DENIED.**