[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 10-14216 & 11-10572
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 27, 2011
JOHN LEY
CLERK

Agency No. A98-971-289


BIN BIN LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
_____

(September 27, 2011)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Bin Bin Lin, a native and citizen of China,

petitions for review of: (1) the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") order denying her claims for asylum and withholding of removal;[1] and (2) the BIA's denial of her subsequent motion to reopen her removal proceedings. On appeal, Lin challenges the finding that she failed to show a well-founded fear of persecution based on her violation of China's family planning policies. After review, we deny the petitions for review.[2]

## I. FUTURE PERSECUTION CLAIMS

To establish asylum eligibility, an alien must show, with specific and credible evidence, either past persecution or a "well-founded fear" of future persecution on account of a statutorily listed factor. Immigration and Nationality Act ("INA") § 101(a)(42), 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a)-(b);

---

[1]On appeal, Lin does not challenge the denial of her request for relief under the Convention Against Torture and thus has abandoned that claim. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[2]Where, as here, the BIA issues its own opinion and adopts the reasoning of the IJ, we review the decisions of both the BIA and the IJ. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In so doing, we review legal conclusions de novo, and factual findings under the "highly deferential" substantial evidence standard. Kasemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350-51 (11th Cir. 2009). Under the substantial evidence test, we will reverse only if the record compels it and the "mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. at 1351 (quotation marks omitted).

Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005).[3]

Government-ordered forced sterilization or persecution for refusing to undergo such a procedure is "persecution on account of political opinion." INA § 101(a)(42)(B); 8 U.S.C. § 1101(a)(42)(B).

Lin's asylum application rests solely on a claim of future persecution. Specifically, Lin alleges that if she returns to her hometown of Hou Dong Village, Tan Tou Town, Chang Le City in Fujian Province, she will be forcibly sterilized and fined because she already has two children, both boys, who were born in the United States.[4]

To establish a well-founded fear, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar v. Ashcroft, 257 F.3d 1262, 1289 (11th Cir. 2001). To show a well-founded fear, the applicant must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." Id. at 1287

---

[3]Similarly, an applicant for withholding of removal must show it is more likely than not that she will be persecuted based on a protected ground. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); 8 C.F.R. § 208.16(b). Because the standard for establishing eligibility for withholding of removal is higher than the standard for establishing asylum eligibility, an applicant who, like Lin, fails to meet her burden of proof for asylum necessarily fails to establish entitlement to withholding of removal. See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004).

[4]Lin's second child was born in the United States two months after she filed her asylum application. At the time of her removal hearing, Lin was two-months pregnant with her third child.

3

(quotation marks omitted). The Supreme Court has explained that "so long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility." INS v. Cardoza-Fonseca, 480 U.S. 421, 440, 107 S. Ct. 1207, 1217 (1987) (quotation marks omitted). The Supreme Court declined to elaborate further, however, and observed that:

> [t]here is obviously some ambiguity in a term like "well-founded fear" which can only be given concrete meaning through a process of case-by-case adjudication. In that process of filling any gap left, implicitly or explicitly, by Congress, the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program.

Id. at 448, 107 S. Ct. at 1221 (quotation marks omitted).

The BIA has determined that asylum claims by Chinese nationals who fear future sterilization based on China's one-child policy must be evaluated on a case-by-case basis. In re J-H-S-, 24 I.&N. Dec. 196, 201 (BIA 2007), pet. for review denied sub. nom. Shao v. Mukasey, 546 F.3d 138 (2d Cir. 2008). To demonstrate an objectively reasonable fear, the alien must show: (1) "the details of the family planning policy relevant to [her]"; (2) "the alien violated the policy"; and (3) "the violation of the family planning policy would be punished in the local area in a way that would give rise to an objective fear of future persecution." Id. at 198-

4

99.[5]

## II.  RULINGS ON LIN'S FUTURE PERSECUTION CLAIMS

Here, the IJ and the BIA concluded that Lin had not established that her municipality was enforcing the family planning policy in a way that would rise to the level of persecution.  The BIA explained that: (1) the record showed that there was "no uniform policy regarding the implementation of the population control law with respect to children born outside of China"; and (2) "while some individuals may be subject to economic penalties or sanctions for such births, [Lin's] evidence does not establish penalties or sanctions rising to the level of persecution."

The IJ and BIA concluded that the Chinese government does not have a national policy of forcibly sterilizing parents who return with two children born in the United States, but rather that these parents tend to be subjected to economic penalties and fines.  The IJ and the BIA cited several recent published BIA opinions that considered State Department documents also found in Lin's record, such as the 2007 China Profile of Asylum Claims and Country Conditions ("2007 Country Profile").  See In re H-L-H- & Z-Y-Z-, 25 I.&N. Dec. 209 (BIA 2010); In

---

[5]Lin does not argue that the BIA's three-part test is an unreasonable interpretation of the term "well-founded fear" in INA § 101(a)(42), 8 U.S.C. § 1101(a)(42)(A), to which we should not apply Chevron deference.

re J-H-S-, 24 I.&N. Dec. 196 (BIA 2007), pet. for review denied sub nom., Shao v. Mukasey, 546 F.3d 128 (2d Cir. 2008); In re J-W-S-, 24 I.&N. Dec. 185 (BIA 2007).

### III.  SUBSTANTIAL EVIDENCE ANALYSIS

Substantial evidence supports the finding of the IJ and the BIA that Lin's fear of forced sterilization or persecutory fines was not objectively reasonable. The documentary evidence indicates that couples who return to Fujian Province with two U.S.-born children are not deemed to have violated the one-child policy at all and, even if they were, they would only be fined.

Specifically, the 2007 Country Profile states that: (1) China's national policy prohibits the use of physical force to compel a person to submit to sterilization; (2) local enforcement of family planning policies is uneven, but consulate general officials visiting Fujian Province and interviewing visa applicants from Fujian Province found evidence of coercion through public pressure and fines, but not the use of physical force; (3) there were some reports in 2006 of forced sterilization in Fujian Province, but Chinese officials claimed these were rare, unsanctioned incidents carried out by overzealous officials who had exceeded their authority; and (4) U.S.-born children of Chinese couples who return to Fujian Province are not counted under the one-child policy if the parents

6

do not enter the children into the household registry; however, the children then would not be eligible for free education, free medical care or other free social services.

The record also contains an October 2006 letter from the Fujian Province Population and Family Planning Committee ("FPPFPC") to the U.S. Consulate General advising that: (1) children born abroad are not considered permanent residents of China and, thus, would not be counted under the one-child policy if the children are not entered in the household registery; (2) under Fujian Province regulations, there are no forced sterilizations; and (3) because Villagers' Committees do not have the authority to "make decisions on family planning disposition[s]," any "certificate/proof issued by said Committee should be deemed ineffective." In a follow-up letter dated January 2007, the FPPFPC clarified that a child born overseas but who has not established permanent residency in China (by being entered in the household registry) would not be counted even if the child was "administered as a Chinese citizen."[6]

Lin's particularized evidence does not compel a conclusion to the contrary. Lin testified that other members of her family were forcibly sterilized. However,

---

[6]Under Chinese law, a U.S.-born child is considered a Chinese citizen unless the parents are lawful permanent residents or citizens of the United States.

Lin did not state that these family members had given birth to two children in the United States. Thus, this evidence does not bear on whether Lin, whose children were born in the United States, would be forcibly sterilized even if she did not enter her children in the household registry.

Lin submitted: (1) statements from her mother and father-in-law, who went to the Xia Jiang and Hou Dong Village Committees, respectively, and were told that either Lin or her husband would be required to undergo sterilization if they returned to China with their two U.S.-born children; and (2) a December 2008 notice purportedly from the Tan Tou Town family planning office, obtained by Lin's mother, stating that Lin was a Chinese citizen, all Chinese citizens who give birth to two children "must undergo sterilization surgery," and Lin's children born abroad would be "administered as Chinese citizens."

The IJ and the BIA gave this documentary evidence little weight, however, because it was inconsistent with the FPPFPC's correspondence to the U.S. Consulate General and the State Department reports. Furthermore, the IJ questioned the authenticity of the Tan Tou Town notice. The IJ noted that the document was not authenticated as required by 8 C.F.R. § 1287.6(b) and that, according to the 2007 Country Profile, such documentation from Fujian Province

8

is subject to widespread fabrication and fraud.[7]

Substantial evidence also supports the finding that Lin did not show an objectively reasonable fear of economic persecution. Fines may amount to persecution if they cause a "severe economic disadvantage," considering the alien's net worth, other sources of income and the conditions of the local economy. See In re T-Z-, 24 I.&N. Dec. 163, 173-74 (BIA 2007) (quotation marks omitted). To meet the severe economic disadvantage standard, the fine should reduce the alien "to an impoverished existence." Id. at 174; see also Yang v. U.S. Att'y Gen, 418 F.3d 1198, 1203 (11th Cir. 2005) (concluding that a single fine for the birth of second child that the Chinese alien did not dispute and paid within three days of the assessment did not amount to past persecution).

The record reflects that it is unlikely Lin's U.S.-born children will be

---

[7]There is no merit to Lin's claim that the IJ and the BIA believed they were required to give greater weight to State Department documents, such as the 2007 Country Profile. Rather, the IJ discussed the 2007 Country Profile and explained why that evidence was entitled to greater weight than Lin's statements and unauthenticated documents.

Similarly, we reject Lin's argument that the IJ and the BIA failed to consider all of her evidence or to conduct a case-by-case evaluation of her asylum claim. The IJ reviewed Lin's evidence and came to a decision based on the weight he gave that evidence in relation to the other documentary evidence. Although the BIA's decision did not review all of Lin's evidence, it stated that the IJ had engaged in a lengthy discussion of the evidence and that the BIA agreed with the IJ's conclusion that Lin had failed to meet her burden of proof as to asylum eligibility. See Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010) (explaining that the BIA and the IJ "are not required to address specifically each claim the petitioner made or each piece of evidence the petitioner presented, but they must consider the issues raised and announce their decision in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted" (quotation marks and brackets omitted)).

counted toward China's family planning policy as long as Lin does not enter them in her household registry. Thus, it appears Lin will not be fined at all, although her children will be ineligible for free social services such as education and medical care.

Even assuming Lin were fined, the record does not compel a conclusion that the fine would reduce Lin to an impoverished existence. The 2007 Country Profile indicated that, while fines can be significant, the Chinese government permits them to be paid in installments and local village committees can sue couples who refuse to pay the fine, but cannot garnish their wages. Lin testified that her fine could amount to approximately $5,000 or $6,000. However, she did not offer any evidence of her net worth, her other sources of income, if any, or the economic conditions in Hou Dong Village or Tan Tou Town. On this record, we are not compelled to conclude that any fine imposed would reduce Lin to an impoverished existence.

## IV. MOTION TO REOPEN

Lin argues that the BIA abused its discretion in denying her motion to reopen.[8] An alien subject to a final order of removal may file a motion to reopen

---

[8]We review the denial of a motion to reopen for an abuse of discretion. Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009). Review "is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." Id.

based on previously unavailable and material evidence of changed country conditions. INA § 240(c)(7)(A), (C)(ii), 8 U.S.C. § 1229a(c)(7)(A), (C)(ii). The motion to reopen must "state new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." Id. § 240(c)(7)(B), 8 U.S.C. § 1299a(c)(7)(B). "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Because motions to reopen are disfavored in removal proceedings, the movant bears a "heavy burden," Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009), and must show that, if proceedings were reopened, "the new evidence would likely change the result in the case." Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256-57 (11th Cir. 2009). We have concluded that evidence of a recent increased campaign of forced sterilization in the alien's home village may satisfy the changed country conditions requirement. See, e.g., id. at 1254; Li v. U.S. Att'y Gen., 488 F.3d 1371, 1375 (11th Cir. 2007).

Here, Lin has not met her heavy burden. Unlike in Li and Jiang, cited above, Lin does not assert that enforcement of the family planning policy has intensified in her home town since her August 24, 2009 hearing. Furthermore,

11

many of the documents Lin offered in her motion to reopen predate her hearing, and Lin gave no reason she could not have offered them at that time.

Lin's documents that post-date her removal hearing included: (1) an October 2009 evaluation of the 2007 Country Profile by Dr. Flora Sapio criticizing the State Department's methods of gathering information (in particular, relying on sources that cannot be verified or trusted);[9] (2) November 10, 2009 testimony of human rights activists and officials before the Congressional Human Rights Commission that, inter alia, forced sterilization and abortion continue to occur in China under the one-child policy; and (3) an affidavit dated August 7, 2009 by Rensu Yuan, a resident of Qinchuan Village, Guantou Town, Jianjiang County in Fujian Province, stating that, upon Yuan's removal to China in September 2008, he was forcibly sterilized because he had two U.S.-born children.[10]

However, these three pieces of new evidence largely pertain to events that happened before Lin's hearing and do not indicate that, after her hearing,

---

[9]With respect to the enforcement of the one-child policy against Chinese couples with children born overseas, Dr. Sapio's report suggested that the FPPFPC's letters to the U.S. Consulate General are inconsistent with a 1958 Chinese law that requires all children born outside mainland China to be entered in the household registry within thirty days of their birth.

[10]Additionally, Lin submitted her own affidavit stating that she had given birth to her third child, a daughter, on April 14, 2010. On appeal, Lin does not raise a specific argument as to the birth of her third child or argue that it increased her risk for persecution. Thus, Lin has abandoned this issue. See Sepulveda, 401 F.3d at 1228 n.2.

12

enforcement efforts against parents of U.S.-born children were stepped up in Lin's hometown.  At most, this evidence shows generally that forced sterilizations continue to occur in China.[11]  As such, we cannot say the BIA abused its discretion in concluding that Lin's new evidence did not show a material change in country conditions warranting reopening.

**PETITIONS DENIED.**

---

[11]The BIA stated that it was not persuaded that Dr. Sapio's report was an expert opinion on the reliability of State Department reports and cited recent published BIA decisions that State Department documents are highly probative and usually the best source of information on foreign nations.  The BIA was within its discretion to continue to credit the 2007 Country Profile over Dr. Sapio's report.