[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14825
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 9, 2011
JOHN LEY
CLERK

Agency No. A099-936-386


XING CHEN,
YU CHAI LIN,

                                                                      Petitioners,

                                    versus

U.S. ATTORNEY GENERAL,

                                                                      Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 9, 2011)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Xing Chen and Yu Chai Lin, natives and citizens of China, seek review of

the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") order denying their asylum claims.[1] Chen and Lin are a married couple with two United States citizen children. On appeal, they challenge the determination that they failed to show a well-founded fear of persecution based on China's one-child policy. After review, we deny the petition.[2]

To establish asylum eligibility, an alien must, with specific and credible evidence, show either past persecution or a "well-founded fear" of future persecution on account of a statutorily listed factor. Immigration and Nationality Act ("INA") § 101(a)(42), 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a)-(b); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005). Government-ordered forced sterilization or persecution for refusing to undergo such a procedure is "persecution on account of political opinion." INA

_____

[1]On appeal, Chen and Lin do not challenge the denial of their claims for withholding of removal and relief under the Convention Against Torture. Thus, we do not address these claims. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (stating that issues not raised in the brief are deemed abandoned).

[2]Where, as here, the BIA issued its own opinion, but "explicitly agreed with several findings of the immigration judge, we review the decisions of both the Board and the immigration judge as to those issues." Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010). We review legal conclusions de novo and findings of fact for substantial evidence. Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350-51 (11th Cir. 2009). Under the "highly deferential" substantial evidence test, we will reverse only if the record compels it, and the "mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. at 1351 (quotation marks omitted).

2

§ 101(a)(42)(B); 8 U.S.C. § 1101(a)(42)(B).

Here, the petitioners' asylum claim rests solely on a fear of future persecution. To establish a well-founded fear, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar v. Ashcroft, 257 F.3d 1262, 1289 (11th Cir. 2001). To show a well-founded fear, the applicant must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." Id. at 1287 (quotation marks omitted). The Supreme Court has explained that "so long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility." INS v. Cardoza-Fonseca, 480 U.S. 421, 440, 107 S. Ct. 1207, 1217 (1987) (quotation marks omitted). The Supreme Court declined to elaborate further, however, and observed that

> [t]here is obviously some ambiguity in a term like "well-founded fear" which can only be given concrete meaning through a process of case-by-case adjudication. In that process of filling any gap left, implicitly or explicitly, by Congress, the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program.

Id. at 448, 107 S. Ct. at 1221.

The BIA has determined that asylum claims by Chinese nationals who fear

3

future sterilization based on China's one-child policy must be evaluated on a case-by-case basis. In re J-H-S-, 24 I.&N. Dec. 196, 201 (BIA 2007), pet. for review denied sub. nom. Shao v. Mukasey, 546 F.3d 138 (2d Cir. 2008). To demonstrate that he or she has an objectively reasonable fear, the alien must show: (1) "the details of the family planning policy relevant to [him]"; (2) "the alien violated the policy"; and (3) "the violation of the family planning policy would be punished in the local area in a way that would give rise to an objective fear of future persecution." Id. at 198-99.[3]

Here, the IJ and the BIA found that the petitioners had not satisfied this three-pronged test. Specifically, the BIA stated that the record evidence, along with documentation assessed in some of the BIA's published cases[4]: (1) did not

---

[3]Petitioners do not argue that the BIA's three-part test is an unreasonable interpretation of the term "well-founded fear" in INA § 101(a)(42), 8 U.S.C. § 1101(a)(42)(A), to which we should not apply Chevron deference.

[4]The BIA's decision cited several recent published BIA opinions that discuss various documents relating to the enforcement of China's family planning policies. See In re J-L-H- & Z-Y-Z-, 25 I.&N. Dec. 209 (BIA 2010); In re J-H-S-, 24 I.&N. Dec. 196 (BIA 2007); In re J-W-S-, 24 I.&N. Dec. 185 (BIA 2007). Perhaps most germane to this appeal is In re J-W-S-, which addressed a future persecution claim by the father of two United States citizen children. 24 I.&N. Dec. 185 (BIA 2007). In J-W-S-, the BIA assessed several State Department documents that are either in our record or contain identical language to more recent State Department documents in our record. The BIA in J-W-S- concluded, inter alia, that the record did not show "that the Chinese Government has a national policy of requiring forced sterilization of parents who return with a second child born outside of China," but rather "suggests that if a returnee who has had a second child while outside of China is penalized at all upon return, the sanctions would be fines or other economic penalties." Id. at 191, 192.

4

demonstrate that the petitioners had a well-founded fear of forced sterilization or economic penalties rising to the level of persecution in their municipality (Kui Qi Village, Ma Wei District, Fujian Province); and (2) established there is "no uniform policy regarding the implementation of the population control law with respect to children born outside of China."

Substantial evidence supports the finding that Chen and Lin's subjective fear of forced sterilization or persecutory fines was not objectively reasonable. The documentary evidence suggests that couples who have children outside China and return to Fujian Province are not deemed to have violated China's one-child policy at all and, even if they were, might only be subject to fines.[5]

Both the State Department's 2007 "China: Profile of Asylum Claims and

---

[5]We reject the petitioners' contention that either the IJ or the BIA erroneously believed it was required to give greater weight to State Department documents than to the petitioners' evidence or that the IJ and the BIA did not adequately consider the petitioners' evidence. Both the IJ and the BIA evaluated the petitioners' evidence and made a case-specific determination that the record as a whole did not establish a reasonable possibility that one of the petitioners would be forcibly sterilized or subjected to fines rising to the level of persecution if they returned to their home village.

As the BIA noted, the IJ conducted a lengthy review of the petitioners' evidence. While the BIA did not similarly review all the petitioners' evidence, the BIA noted their evidence and stated it was considered in concluding that the record did not establish that family planning policies in their municipality were being enforced in such a way as to give rise to a well-founded fear. See Ayala, 605 F.3d at 948 ("The Board and the immigration judge are not required to address specifically each claim the petitioner made or each piece of evidence the petitioner presented, but they must consider the issues raised and announce their decision in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted." (quotation marks and brackets omitted)).

Country Conditions" ("2007 Profile") and the 2008 State Department Country Report on Human Rights Practices in China ("2008 Country Report") stated that there were some incidents of forced sterilization in some areas. However, according to the 2007 Profile, (1) the central government prohibits physical coercion to undergo sterilization; and (2) U.S. officials in China are unaware of "the alleged official policy, at the national or provincial levels, mandating the sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad." The 2007 Profile noted that, according to the Fujian Provincial Birth Planning Committee ("FPBPC"), for rural households (such as the petitioners'), fines were based on net per capita income levels, "couples unable to pay the fee immediately may be allowed to pay in installments" and local birth planning committees could sue families who refused to pay a fine, but could not garnish wages. Finally, the 2007 Profile noted that documents from China, and particularly from Fujian Province, were "subject to widespread fabrication and fraud."

In an October 13, 2006 letter, the Fujian Province Population and Family Planning Committee ("FPPFPC") responded to family planning questions posed by the U.S. Consulate General and stated that: (1) children born overseas would not be counted toward family planning regulations unless the children established

6

permanent residency when they returned to China; (2) there were no forced sterilizations; and (3) Villagers' Committees did not have "the right to make decisions on family planning disposition" and "[a] certificate/proof by said Committee should be deemed ineffective." In a January 17, 2007 letter to the U.S. Consulate General, the FPPFPC clarified that children born overseas to a Chinese resident who did not establish permanent residency in China would not be counted even if the children were "administered as a Chinese citizen[s]."[6] The 2007 Profile indicates, however, that such children would be ineligible for "free public education, medical care, and social services."

Furthermore, the particularized evidence Chen and Lin submitted does not compel a contrary conclusion. Chen and Lin submitted letters from friends in Kui Qi Village describing their own forced sterilizations and fines after the birth of a second child. However, Lin admitted that their friends' children had been born in China, not in the United States. Chen and Lin submitted an affidavit of one couple who met, married and had two children while living in Japan and, upon their return to China, the husband was forcibly sterilized and fined 11,000 Yuan.

_____

[6]Under Chinese law, U.S.-born children are considered Chinese nationals unless their parents are lawful permanent residents or citizens of the United States. Lin and Chen's children had U.S. passports and Chinese travel documents. The Chinese travel documents indicated that the Chinese government considered them Chinese citizens.

However, Lin testified that this couple did not live in Kui Qi Village.

Chen and Lin submitted an October 2007 certificate from the Kui Qi Village Committee stating that (1) under Chinese family planning policies, after giving birth once, a mother had to have an IUD inserted and, after giving birth to a second child, a parent must be sterilized and fined; and (2) upon their return, Chinese citizens would be punished for violating the policy while abroad. However, the certificate does not indicate what sort of punishment would be meted out, and, according to the FPPFPC October 2006 letter, the Village Committee would not be authorized to perform forced sterilizations. Furthermore, the Village Committee's certificate is inconsistent with the policy as stated in the FPPFPC's two letters that foreign-born children do not count toward the family planning policy so long as they do not establish legal permanent residence in China.

Substantial evidence also supports the finding that Chen and Lin did not show a well-founded fear of economic persecution. Fines may amount to persecution if they cause a "severe economic disadvantage," considering the alien's net worth, other sources of income and the conditions of the local economy. See In re T-Z-, 24 I.&N. Dec. 163, 173 (BIA 2007). To meet the severe economic disadvantage standard, the fine should reduce the alien "to an

8

impoverished existence." Id. at 174.

As noted above, it appears Chen and Lin's two children born in the United States would not be counted toward China's family planning policy so long as the petitioners do not try to establish their children's legal permanent residence in China. Thus, it is questionable whether the petitioners would be subjected to fines, although their children would be ineligible for free medical care and public education.

Even assuming Chen and Lin would be fined, Lin testified that she thought the fine would be 40,000 RMB and that her family's annual income was 10,000 RMB. However, Lin did not provide any evidence as to her family's or Chen's family's net worth, other sources of income and support or the conditions of the local economy. Further, the record reflects that, if the petitioners could not pay the fine at once, they may be allowed to pay it in installments and their wages could not be garnished. We cannot say that this record compels a conclusion that there is a reasonable possibility Chen and Lin would face economic persecution if they returned to China.

**PETITION DENIED.**

9