[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 4, 2012
JOHN LEY
CLERK

No. 11-13719
Non-Argument Calendar
_____

Agency No. A099-936-386


XING CHEN,
YU CHAI LIN,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 4, 2012)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Xing Chen and Yu Chai Lin, natives and citizens of China, seek review of

the Board of Immigration Appeals's ("BIA") order denying their motion to reopen

their proceedings following the Immigration Judge's ("IJ") denial of asylum pursuant to the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). After review, we affirm.

## I. BACKGROUND

### A. Asylum Applications

On January 5, 1999, Chen entered the United States at the Canadian border. In 2000, Lin entered the United States. In October 2006, Chen married Lin, and their first son, Kevin, was born on September 1, 2006. Lin soon became pregnant with the couple's second child.

In March 2007, Chen and Lin applied for asylum. In his application, Chen stated that he feared returning to China because the Chinese government would force Lin to abort their second child. If they returned to China after their second child was born, they would be fined and either Chen or Lin would be forcibly sterilized by the government. In her application, Lin likewise sought asylum based on political opinion because she feared being forced to abort her second child or being forcibly sterilized by the government.

In support of their applications, Chen and Lin submitted many news articles and transcripts of congressional hearings regarding China's one-child policy;

affidavits from other Chinese citizens who had been forcibly sterilized; fine schedules for violating the one-child policy in various regions; certificates from a number of villages in China indicating that their family planning policies required insertion of an intrauterine device after one child and sterilization of one parent after a second child; letters and identification documents from family and friends regarding forced sterilizations in China; and personal documents such as birth certificates, travel documents, passports, and family photos.

They also submitted several State Department reports on China and its human-rights practices, including one report titled, "China: Profile of Asylum Claims and Country Conditions" ("2007 Profile"). The 2007 Profile stated that China's birth planning policies retained "harshly coercive elements." Although the central government prohibited physical coercion to undergo sterilization, there were "continuing reports of physical coercion to meet birth targets in some areas." Further, "U.S. officials in China are not aware of the alleged official policy, at the national or provincial levels, mandating the sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad." According to the 2007 Profile, the Fujian Provincial Birth Planning Committee ("FPBPC") claimed there were no forced sterilizations in the province within the last ten years, but it was "impossible to confirm this claim, and, in 2006,

3

reportedly, there were forced sterilizations in Fujian." Finally, the 2007 Profile noted that documents from China, and particularly from Fujian Province, were "subject to widespread fabrication and fraud."

At the merits hearing, Lin testified that she was born in Kefu Village, Tan Tou Town, Fujian Province, China. Lin filed for asylum in 2007 because she had violated China's one-child policy by having two children. She and her husband came from agricultural families. If they returned to China, they would live with her husband's family in Kuei Qi Village, Ma Wei District, in Fujian Province and would register their children in the household registry system. If they did not register the children, they would pay a fine and face criminal charges. Lin learned about China's one-child policy because some of her relatives and some of Chen's relatives were sterilized. Lin testified that, if she and her family returned to China, either Lin or Chen would be forcibly sterilized and they would be arrested if they did not pay the fine for having a second child. Lin did not want to be sterilized.

**B. IJ's and BIA's Decisions**

The IJ denied Chen's and Lin's asylum applications. After considering the background evidence and Lin's testimony, the IJ determined that Chen and Lin had not provided sufficient evidence to show that they had a well-founded fear of future persecution. The IJ considered the 2007 Profile, noting that it contradicted

4

some of Chen's and Lin's assertions. For example, although local enforcement and regulations varied, the policies were more strictly adhered to in cities than in rural areas, and Chen and Lin were from a rural area. The IJ also cited to the 2007 Profile in concluding that forced sterilizations and forced abortions were prohibited, and according to the FPBPC, there had not been a forced sterilization in Fujian Province in the past ten years. The IJ found the State Department reports more persuasive than the evidence Chen and Lin provided. Accordingly, the IJ denied asylum and withholding of removal and ordered Chen and Lin removed to China.

Chen and Lin appealed to the BIA, which dismissed the appeal. The BIA concluded that the IJ properly considered the evidence, as shown by the "lengthy discussion of the evidence in his decision." The BIA agreed with the IJ that Chen and Lin had not shown that they were eligible for asylum because they did not show that the one-child policy was being enforced in their home region "or that such enforcement efforts would give rise to a well-founded fear of future persecution due to a violation." The BIA considered Chen's and Lin's evidence—including two of the villagers' committee certificates, as well as the evidence discussed in the BIA's published cases—determining that there was "no uniform policy regarding the implementation of the population control law with

5

<u>respect to children born outside of China</u>." The BIA also affirmed the IJ's conclusion that "while some individuals may be subject to economic penalties or sanctions for such births, the [evidence in this case did] not establish penalties or sanctions rising to the level of persecution."

Chen and Lin petitioned for review. Denying the petition, this Court held that substantial evidence supported the IJ's and BIA's determination that Chen and Lin did not have an objectively reasonable well-founded fear of forced sterilization or persecutory fines. <u>Chen v. U.S. Att'y Gen.</u>, 426 F. App'x 717 (11th Cir. 2011).

**C. Motion to Reopen**

On December 23, 2010, while their petition was pending before this Court, Chen and Lin timely moved before the BIA to reopen the proceedings to submit new evidence on their one-child-policy claim and to present a new claim for relief based on Lin's practice of Falun Gong. They requested that the case be remanded to an IJ for reconsideration.

In support of their motion, Chen and Lin submitted an affidavit in which Lin attested that, in March 2010, Lin began practicing Falun Gong due to her health. Lin always felt tired after long hours of working in a restaurant and had leg pain due to standing all day at work. Lin mostly practiced Falun Gong at home, but

6

sometimes she practiced at the park "to get a better result." After having practiced Falun Gong for a few months, Lin felt less tired, suffered less pain in her legs, and decided to continue practicing Falun Gong in the future. Lin attested that she would be detained, beaten, interrogated, and fined by the Chinese government, which prohibited the practice of Falun Gong. Lin and Chen also feared that one of them would be sterilized if they returned to China, because they had two children (although both children were born in the United States). They feared being fined for their second child. Because they had no means to pay a fine, they feared their home would be destroyed or they would face other severe punishment.

Chen and Lin also submitted, inter alia: (1) the State Department's "International Religious Freedom Report 2007," which stated that the Chinese government designated Falun Gong as a "cult" and repressed the practice of Falun Gong through arrest, detention, imprisonment, and sometimes torture and abuse, although leaders typically received harsher punishment than practitioners; (2) several news articles, a book chapter, and a 2006 congressional report on Falun Gong; (3) a review and evaluation of the 2007 Profile by Dr. Flora Sapio, a guest lecturer of Contemporary Chinese Studies at a German university, which review purported to assess the thoroughness, accuracy, and reliability of the 2007 Profile that Chen and Lin submitted with their original asylum application; (4) documents

from a hearing before Congress's Tom Lantos Human Rights Commission ("Tom Lantos Commission Report") in November 2009, during which several organizations and witnesses provided testimony regarding 16 cases of coercive family planning, such as Chinese officials forcing women to have abortions and even forcibly inducing labor and killing the baby upon delivery; (5) a portion of the 2009 Annual Report of the Congressional-Executive Commission on China ("2009 Congressional-Executive Commission Report"), which indicated that China "continued" to enforce a policy that interfered with women's reproductive rights, that forced abortion was an "official policy instrument" in Fujian Province, and that, in February 2009, officials within Fujian Province initiated a five-week campaign of heightened enforcement, using forced abortions; (6) a copy of Zheng v. Holder, 361 F. App'x 184 (2d Cir. 2010), an unpublished Second Circuit decision involving an asylum claim for a Chinese petitioner that, like Chen and Lin, also gave birth to two children while in the United States; (7) an affidavit from Renzun Yuan, a resident of Qinchuan Village in Fujian, who stated that, upon his return to China in 2008, he was forcibly sterilized because he had two American-born children; and (8) five news articles published in 2009 and 2010 documenting sterilization campaigns in Guangdong Province, during which

8

government officials detained elderly relatives to persuade their family members to be sterilized.

The BIA denied the motion to reopen.[1]  As to Chen's and Lin's renewed claim of persecution under China's one-child policy, the BIA determined that the majority of their evidence was new and previously unavailable.  However, the BIA determined that the evidence was insufficient to establish Chen's and Lin's prima facie eligibility for asylum.  The BIA considered Dr. Sapio's critique of the 2007 Profile, but gave more weight to the reliability of the Profile because Dr. Sapio's article was not based on personal knowledge, only conjectured regarding the motivations of the State Department, and speculatively challenged the validity of the State Department's sources.  The BIA noted that (1) in their initial application Chen and Lin relied on the 2007 Profile and (2) they had waived an opportunity to object to the use of the 2007 Profile at the merits hearing before the IJ.  The BIA also determined that Dr. Sapio's report exhibited an unfavorable bias against the State Department and other government agencies.

As to the Tom Lantos Commission Report, although it contained anecdotal evidence, this evidence did not convince the BIA that it had "erred in finding that

---

[1] The BIA issued two separate orders on the motion to reopen, one for Chen and one for Lin, although the text of each order is materially the same.

there [was] no country-wide campaign by Chinese authorities to forcibly sterilize parents returning to China with a second child born abroad." As to the 2009 Congressional-Executive Commission Report, the BIA noted that Chen and Lin submitted only 10 pages of the 300-page report and that the submitted portion of the report discussed occurrences in a province other than Fujian, where Chen and Lin would return.

The BIA also found that the Second Circuit unpublished decision, cited in the motion to reopen, had no precedential value, and, further, was distinguishable on the facts. As to the affidavit from Yuan, the BIA noted that the affidavit was not notarized, such that the BIA could not be certain of Yuan's identity or the reliability of the affidavit. Further, the BIA noted that the affidavit may have been prepared for the purposes of litigation, and that Chen and Lin did not explain how they came into possession of Yuan's affidavit. The BIA also determined that the submitted news articles did not discuss conditions in Fujian Province, such that the articles did not support Chen and Lin's claim. Thus, the BIA determined that Chen's and Lin's new evidence did not establish grounds to reopen their case.

As to Lin's claim based on her recent commitment to Falun Gong, the BIA concluded that Lin had not shown prima facie eligibility for relief. The BIA determined that Lin had not provided any evidence to suggest that the government

10

was aware or could become aware of her Falun Gong practice, or that the government had the inclination to persecute her on account of this practice. The BIA noted that, although Lin submitted a few news articles regarding the mistreatment of Falun Gong practitioners in China, the most recent was dated in 2008, such that Lin did not provide information about current conditions in China for Falun Gong practitioners. The BIA concluded that Lin had not met her heavy burden of establishing eligibility for asylum. Thus, the BIA denied Chen and Lin's motion to reopen as to the Falun Gong claim.

## II. DISCUSSION

A party may file only one motion to reopen removal proceedings, and that motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A), (B); 8 C.F.R. § 1003.23(b)(3). The BIA may deny a motion to reopen based on any of the following grounds: "1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001); see also 8 C.F.R.

11

§ 1003.2(a) (providing that the BIA may deny a motion to reopen even if the alien establishes a prima facie case for relief).

We review for abuse of discretion the denial of a motion to reopen removal proceedings. Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009). The moving party bears a "heavy burden," and judicial review "is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." Id. Because of the "heavy burden," the movant must show that, if proceedings were reopened, "the new evidence would likely change the result in the case." Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256–57 (11th Cir. 2009).

## A. One-Child-Policy Claim

Chen and Lin argue that the BIA abused its discretion in denying their motion to reopen because they presented additional evidence to establish prima facie eligibility for asylum based on China's one-child policy.

We acknowledge that evidence of a recent increased campaign of forced sterilization in the alien's home village may warrant reopening of immigration proceedings. See, e.g., Jiang, 568 F.3d at 1254; Li v. U.S. Att'y Gen., 488 F.3d 1371, 1375 (11th Cir. 2007). Here, however, the BIA did not abuse its discretion in denying Chen and Lin's motion to reopen. Much of the evidence Chen and Lin

12

submitted was unauthenticated and incomplete, and none of the evidence showed a recent campaign of forced sterilization in their home village.

Additionally, the BIA did not abuse its discretion by rejecting Dr. Sapio's critique of the 2007 Profile because the BIA was entitled to rely on the State Department reports. See Reyes–Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004). We note that Dr. Sapio concedes in her report that "[t]here is no univocal consensus on whether forced abortions and sterilizations are still used to implement the family planning policy. Widely different opinions exist. All of them rest of the available evidence, which is neither conclusive nor comprehensive." Given the other evidence in the record, we cannot say that the BIA abused its discretion in concluding that the new evidence was unlikely to change the outcome of the proceedings.

**B. Falun Gong Claim**

Lin argues that the BIA abused its discretion in denying her motion to reopen as to her Falun Gong asylum claim because she presented evidence that she practices Falun Gong and that Falun Gong practitioners are persecuted in China.

Here, the BIA did not abuse its discretion by concluding that Lin's new Falun Gong evidence did not establish prima facie eligibility for asylum. Lin presented no evidence that the Chinese government is aware that she practices

Falun Gong. Thus, it is unclear from the record whether Lin would be singled out for mistreatment if she returns to China.

Furthermore, even if Chinese authorities learned of Lin's practice of Falun Gong, it is not clear whether any response would rise to the level of persecution. This Court has concluded that "[i]nvolvement with Falun Gong in China by itself does not entitle a person to asylum in the United States." Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006). And Lin states that she is a practitioner of Falun Gong, not a leader, and her own evidence shows that the government reserves the harshest punishment for the movement's leaders. Finally, although Lin submitted several news articles discussing mistreatment of Falun Gong practitioners in China, the most recent of these articles was published in 2008. Thus, Lin failed to present any current evidence of persecution of Falun Gong practitioners, and she failed to present any evidence that she would be specifically targeted for persecution.

**PETITION DENIED.**

BARKETT, Circuit Judge, specially concurring:

I concur in the majority opinion's result only because I believe that the Board of Immigration Appeals did not abuse its discretion in denying the Petitioners' motion to reopen.