# In re J-H-S-, Respondent

*Decided June 7, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

   A person who fathers or gives birth to two or more children in China may qualify as a refugee if he or she establishes that the births are a violation of family planning policies that would be punished by local officials in a way that would give rise to a well-founded fear of persecution.

FOR RESPONDENT:  Gary J. Yerman, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Anne Bhargava, Assistant Chief Counsel

BEFORE:  Board Panel:  HOLMES, GRANT, and MILLER, Board Members.

HOLMES, Board Member:

   In a decision dated February 27, 2003, an Immigration Judge denied the respondent's application for asylum, finding that he lacked credibility, failed to establish that he suffered past persecution on account of his opposition to family planning policies, and failed to establish a well-founded fear of future persecution. On June 28, 2004, we affirmed the Immigration Judge's decision without opinion.

   This case is now before us on remand from the United States Court of Appeals for the Second Circuit, which rejected the respondent's challenge to the Immigration Judge's adverse credibility determination in its October 12, 2006, order.  *See Jian Hui Shao v. BIA*, 465 F.3d 497 (2d Cir. 2006).  The court remanded the case for us to consider "whether a person who fathers or gives birth to two or more children in China, in apparent violation of China's family planning policies, may qualify on that basis alone as 'a person who has a well founded fear that he or she will be forced' by the Chinese government 'to abort a pregnancy or to undergo involuntary sterilization' and may accordingly qualify as a refugee" under section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (2000). *Id.* at 498.  Both parties have filed additional briefs on remand.  On consideration of the Second Circuit's mandate and the record in the instant case, we will again affirm the Immigration Judge's decision and will dismiss the respondent's appeal.

## I.  FACTUAL AND PROCEDURAL HISTORY

The record reflects that the respondent was born in Fuzhou City in the Fujian Province of China in January 1972.  He married his wife in China on October 24, 1997.  In March 1999, the respondent's wife gave birth to their first child, a daughter.  The respondent claims that his wife was fitted with an intrauterine device to prevent further pregnancy, but they paid to have the device removed in September 2001 and his wife subsequently became pregnant for the second time.

According to the respondent, his wife missed a regularly-scheduled gynecological exam in January 2002 because she believed she might be pregnant.  She went into hiding, where she ultimately gave birth to the couple's second daughter on September 20, 2002.  The respondent claims that during the time his wife was in hiding, birth control officials arrested him, detained him for 2 days, and beat him in an attempt to coerce him into revealing his wife's hiding place.  He states that he refused to reveal the information and ultimately escaped his holding cell through the help of a former classmate.  Thereafter, the respondent fled to the United States, arriving in February 2002, and was in this country at the time of the birth of his second child.  He filed an application for asylum in September 2002.

Apart from the facts that the respondent fathered two children in China and has been present in the United States since February 2002, the respondent's claims were found to lack credibility by the Immigration Judge, who specifically found reason to doubt the veracity of the respondent's claim that he had a violent encounter with birth control officials in China.  We affirmed that finding as not clearly erroneous in our decision and it was, in turn, affirmed by the Second Circuit.  *See Jian Hui Shao v. BIA*, *supra*, at 500-01.  As a result, nothing in the record indicates that the respondent had any contact with family planning or other law enforcement authorities in China.

Although the Second Circuit found that the Immigration Judge's adverse credibility determination was supported by substantial evidence, the court recognized the possibility that the respondent could have presented a viable claim for relief simply by virtue of the undisputed fact that he has fathered two children in China, a country that places certain restrictions on citizens' ability to procreate.  Pursuant to the Second Circuit's order, we must decide whether "one who fathers two children in violation of China's family planning policy, as [the respondent] asserts he has done, may–*on that basis alone*, without any need for particularized evidence of past persecution or threats of future harm–qualify as a 'refugee' as defined by the [Act]." *Jian Hui Shao v. BIA*, *supra*, at 501 (emphasis added) (footnote omitted).  As we conclude below, an alien who has established that he or she has had two children in China may

qualify as a refugee if the evidence presented establishes, on a case-by-case basis, that the births violated family planning policies in that alien's local province, municipality, or other locally-defined area, and that current local family planning enforcement efforts would give rise to a well-founded fear of persecution because of the violation.

## II.  ANALYSIS

### A. Family Planning Policies

As an initial matter, we note that the respondent cannot meet his burden of proving that he suffered past persecution in China, given the fact that he was found to lack credibility regarding his past interactions with birth control officials in China.  Therefore, the only issue for our consideration on remand is whether the birth of his two daughters in China gives rise to a well-founded fear of future persecution.  The respondent bears the burden of proving past persecution, as well as his claim that fathering two daughters in China gives rise to a well-founded fear of persecution.  In this case, because there is no past persecution, and therefore no rebuttable presumption of a well-founded fear of future persecution, the respondent must prove that he has a subjectively genuine and objectively reasonable well-founded fear of persecution.  *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

Assuming that the respondent has a genuine fear of returning to China, the starting point for determining whether there is objective evidence supporting this fear is proof of the details of the family planning policy relevant to each individual case.  *Matter of C-C-*, 23 I&N Dec. 899 (BIA 2006).  Although in general China's family planning policy has been termed a "one child" policy, in practice it is apparent that deviations from the general rule of "one child" persist.  *See* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China Country Reports on Human Rights Practices–2005* [Mar. 8, 2006], *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61605.htm [hereinafter *2005 Country Reports*].[1]  In general, China's 2002 National Population and Birth Planning Law allows married couples to have one child as a matter of right and permits many couples to have a second within certain time frames.  *See* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 24

---

[1] We note that this report is cited by the respondent in the brief he submitted on remand. We have authority to take administrative notice of this report, as well as the more recent reports released by the United States Department of State.  *See Yang v. McElroy,* 277 F.3d 158, 163 n.4 (2d Cir. 2002); 8 C.F.R. § 1003.1(d)(3)(iv) (2007); *see also infra* note 3.

(May 2007) [hereinafter *2007 Profile*]; *see also* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 21 (Oct. 2005) [hereinafter *2005 Profile*]. Deviations in implementing this law occur at the provincial, or even village, level. *See 2007 Profile*, *supra*, at 23. The *2007 Profile* specifically states that the "implementation of birth planning policy in villages . . . is the responsibility of local officials." *Id.* Moreover, certain geographic and ethnic factors may trigger exceptions to the "one-child" policy. Chinese living in rural areas–including parts of Fujian Province, where the respondent's home is located–have been authorized to have a second child, particularly where the first child is female. *See 2005 Country Reports*, *supra*. In Anhiu Province, some 13 categories of married couples (including coal miners, remarried divorcees, and farm couples) are permitted to have a second child. *Id.* Ethnic minorities may also be allowed more than one child. *Id.*; *see also 2007 Profile*, *supra*, at 24.

If an applicant has established the details of the specific "policy" applicable in his or her case, a related inquiry arises as to whether the facts in the record establish that the alien violated the policy.[2] For example, if an alien established that no exceptions to the one-child policy applied, the question becomes whether the alien has established, through credible testimony or otherwise, that he or she has fathered or given birth to more than one child, in violation of that policy. This point is particularly relevant to cases in which an alien claims to have violated family planning policy by having two or more children in the United States. In *Matter of C-C-*, *supra*, at 903, we found that the alien had not met her burden of proving that giving birth to two United States citizen children would be viewed by local family planning officials as a violation of that province's population control laws. *See also Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007). But even where, as here, an alien claims to have fathered (or given birth to) two children in China, the same initial two-part burden applies. That is, the alien must prove that there was a policy against such births and that he or she, in fact, violated the policy. Evidence reflecting a violation of established policy may include birth certificates for all children born to a couple, or other evidence reflecting their birth.

Assuming that this burden has been met, the alien must also establish that the violation of the family planning policy would be punished in the local area in a way that would give rise to an objective fear of future persecution. Just

---

[2] As discussed below, a demonstrated policy is not itself enough. Many countries have policies, even laws, that for any number of reasons–lack of resources, ability, or political will–simply are not meaningfully enforced.

as exceptions to the so-called "one-child" policy abound, enforcement of the policy varies greatly, depending on locality. *See 2005 Profile*, *supra*. Local officials' "personalities, interests, and personal connections . . . often influence their enforcement of national, provincial, and local laws, regulations, and policies, including birth planning policies." *2007 Profile*, *supra*, at 23. Such disparate influences tend to result in "uneven" enforcement of national policies. *Id.* In the past, enforcement efforts in Fujian Province, where the respondent comes from, were specifically described as "lax" or "uneven" in published reports and court decisions. *See, e.g.*, Bureau of Democracy, Human rights, and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 20, 25 (Apr. 14, 1998) [hereinafter *1998 Profile*]; *Huang v. U.S. INS*, 421 F.3d 125, 128 (2d Cir. 2005).

In a recent report on the subject, the State Department described the enforcement efforts as follows:

> Those who violated the child limit policy by having an unapproved child or helping another to do so faced disciplinary measures such as job loss or demotion, loss of promotion opportunity, expulsion from the party (membership in which was an unofficial requirement for certain jobs), and other administrative punishments, including in some cases the destruction of property. In the case of families that already had two children, one parent was often pressured to undergo sterilization. These penalties sometimes left women with little practical choice but to undergo abortion or sterilization. There were several rewards for couples who adhered to birth limitation laws and policies, including monthly stipends and preferential medical and educational benefits.

Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China Country Reports on Human Rights Practices–2006* (Mar. 6, 2007), *available at* http://www.state.gov/g/drl/rls/hrrpt/2006/78771.htm [hereinafter *2006 Country Reports*].

The Chinese Government as a whole clearly achieves compliance with birth limits using both incentives and pressure. At issue is whether an alien can prove that he or she personally faces a well-founded fear of persecution–generally, forced abortion or sterilization. "Pressure" to undergo abortion or sterilization may not necessarily mean physical or mental *coercion* in the above context of economic rewards and benefits. Indeed, the State Department recently reported that although "public and other pressure" is used in Fujian Province to encourage compliance with birth planning laws, officials "did not find any cases of physical force employed in connection with abortion or sterilization." *2007 Profile*, *supra*, at 26. Enforcement efforts resulting in moderate economic impact would not, in general, prove a well-founded fear of future persecution. *See Matter of T-Z-*, 24 I&N Dec. 163 (BIA 2007); *Matter of Y-T-L-*, 23 I&N Dec. 601, 606 (BIA 2003). Whether

more severe economic sanctions can rise to the level of persecution is a question best addressed on a case-by-case basis. *Cf. Guan Shan Liao v. U.S. Dep't of Justice*, 293 F.3d 61, 67, 70 (2d Cir. 2002).

We acknowledge evidence that China's system of using pressure and incentives to achieve family planning goals has to some extent included physical coercion. In particular, in some localities, reports have emerged that scores of married couples have been detained and forced to submit to pregnancy testing, with the result that those who were found to have unauthorized pregnancies (or children) were placed into "population schools," described most recently by the State Department as "unofficial prisons." *2007 Profile*, *supra*, at 24. The most recent State Department *Country Reports* reflect that forced sterilizations and abortions, in violation of the national law, continued to be documented in rural areas. *See 2006 Country Reports*, *supra*. "Reports" of forced sterilizations also came from Fujian Province, which has both urban and rural populations. *See 2007 Profile*, *supra*, at 26-27. Moreover, a recent decision from the Second Circuit has stated that an information handbook apparently distributed in or around 1999 to family planning officials responsible for Changle City, Fujian Province, states that the birth control measure imposed upon the birth of a second child is sterilization. *See Shou Yung Guo v. Gonzales*, 463 F.3d 109, 115 (2d Cir. 2006) (noting that a July 1999 *Q&A for Changle City Family-Planning Information Handbook* lends "powerful potential support" to a claim that a parent of two children would be subject to forced sterilization).

In sum, the question whether the birth of two children in China gives rise to a well-founded fear of persecution depends on the facts of each case, including, in particular, the details of local family planning policies, proof that an alien violated such policies, and evidence that local enforcement efforts against the violation will rise to the level of persecution. Evidence bearing on all of these factors must, taken together, establish that a reasonable person in the respondent's circumstances would fear persecution if he returned to his home country. *Matter of Mogharrabi*, 19 I&N Dec. 439, 445 (BIA 1987). *See generally INS v. Cardoza-Fonseca*, *supra*.

### B. Application to the Respondent's Case

Applying the above framework to the respondent's case, we accept the fact, for purposes of this appeal, that the respondent is the father of two daughters in China. However, because the respondent's testimony was deemed not credible as to his past dealings with family planning officials and his flight from their enforcement efforts, we cannot credit any of his claims that his wife's second pregnancy triggered enforcement efforts against him for violating birth limits. We therefore must turn to other evidence of record for

a description of local family planning policies and enforcement practices. Based on the record as a whole, we find that the respondent has not presented sufficient evidence to prove a well-founded fear of future persecution in Fujian Province on account of having fathered two daughters there.

The background evidence of record currently consists of the aforementioned *1998 Profile* and the 2001 State Department *Country Reports*. *See* Bureau of Democracy, Human Rights, and Labor, Dep't of State, *China Country Reports on Human Rights Practices–2001* (Mar. 4, 2002), *available at* http://www.state.gov/g/drl/rls/hrrpt/2001/eap/8289.htm. As noted above, we also are considering more recent documents authored by the State Department to reflect current country conditions. *See 2006 Country Reports*, *supra*; *2005 Country Reports*, *supra*; *2007 Profile*, *supra*; *2005 Profile*, *supra*.[3] Such reports generally have been deemed credible and authoritative sources of information. *See Matter of V-T-S-*, 21 I&N Dec. 792, 799 (BIA 1997).

The record does not clearly show that the birth of the respondent's second child would be viewed as a violation of family planning policies in Fujian Province.[4] The evidence reflects that where the first child is a girl, a Chinese couple can apply to have a second child. Because the respondent was not credible, we do not know whether he and his wife ever sought such permission, and whether the second child is, in fact, properly classified as an "overbirth" in Fujian Province. We also do not know the extent to which the respondent accepted or declined the stipends or other benefits mentioned in the State Department's *Country Reports* and *Profiles*.

Assuming that the birth of the respondent's second child would be viewed as unauthorized, the record does not contain persuasive evidence that this birth would trigger enforcement activity in Fujian Province. Enforcement efforts in that province were described as "lax" and "uneven" in the *1998 Profile*, and countrywide enforcement was similarly described as "uneven" in the *2007 Profile*. Of course, we acknowledge "reports" of forced sterilizations of women in that province as documented in the *2006 Country Reports*, *supra*, but note that physical coercion continues to be officially condemned. Indeed,

---

[3] We take administrative notice of these reports and consider them in the context of the entire record, including contrary evidence presented by the respondent. *Chen v. U.S. INS*, 359 F.3d 121, 130 (2d Cir. 2004).

[4] We note that such determinations are a prerequisite to a finding that there is a "pattern or practice of persecution" of persons similarly situated to the respondent, a point that the respondent argues on remand. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A) (2007).

in 2006, State Department interviews with visa applicants from Fujian Province yielded "no evidence" of forced abortions. *2007 Profile*, *supra*, at 27.

The Second Circuit has observed that certain documents reflect that the birth control measure imposed upon birth of a second child in Changle City, Fujian Province, is "sterilization." *See Show Yung Guo v. Gonzales*, *supra*, at 113. However, there is no indication that the court's reference is to a policy of forcible sterilization, as opposed to China's well-documented system of offering incentives to obtain compliance with birth control limits. As a whole, the record lacks persuasive evidence to prove that the mere birth of two children in China would trigger family planning enforcement efforts that would rise to the level of persecution under the circumstances of this case. On balance, the evidence suggests that physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China's national laws, and that the overall policy is much more heavily reliant on incentives and economically-based penalties. Given the evidence of record regarding the circumstances of this respondent and the most recent available evidence of country conditions in China, we find that the respondent has not carried his burden of showing that he has a well-founded fear of persecution in China on account of fathering two children. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.