NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4012
_____

AI MIN LIN,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A073-577-407)
Immigration Judge: Honorable Annie S. Garcy
_____

Submitted Under Third Circuit LAR 34.1(a)
On November 8, 2013
_____

Before: GREENAWAY, JR., VANASKIE, and ROTH, *Circuit Judges*.

(Opinion Filed: July 3, 2014)

_____

OPINION
_____


GREENAWAY, JR., *Circuit Judge*.

Ai Min Lin ("Lin") seeks review of the September 26, 2012 final order rendered

by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ

Garcy") order that Lin be removed to China, and denying Lin's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). For the reasons that follow, we will deny her petition for review.

## I. Factual Background

Lin is a native and citizen of the People's Republic of China, whose home village is Gongyu, located in Guantou Township in the Fujian Province. Lin entered the United States in 1992 without proper documentation. During her extended and unlawful stay, she married Zheng Yong Hua, a Chinese citizen, in New York in 2007. Lin and her husband have three children, two girls and one boy, all of whom were born in the United States.

In 1997, Lin was placed into removal proceedings before the Newark Immigration Court. Seeking relief from removal, Lin sought asylum, withholding of removal, and CAT protection. She withdrew her application in 1998 upon accepting a grant of voluntary departure. However, Lin did not voluntarily depart the United States, as was required by the grant of voluntary departure. Instead, in 2006, she filed a motion to reopen requesting yet another opportunity to seek asylum based on a claim of past persecution and a fear of future persecution in China for having violated China's family planning policy. An immigration judge ("IJ Dogin") granted Lin's motion to reopen in 2007. Lin filed an amended application seeking asylum, withholding of removal, and CAT protection with the immigration court on March 29, 2007.

On June 27, 2007, IJ Dogin denied Lin's applications seeking relief and

2

protection. Specifically, IJ Dogin found her claim of past persecution to be unsubstantiated by the record and her claim of fear of future persecution to be contradicted by determinations made in prior BIA decisions. On appeal, the BIA sustained IJ Dogin's determination regarding the past persecution claim, but remanded for reconsideration of Lin's fear of future persecution claim. The BIA also found that IJ Dogin "failed to adequately consider [Lin's] objective evidence . . . in light of the Third Circuit's recent decision," *Zheng v. Att'y Gen.*, 549 F.3d 260, 265-69 (3d Cir. 2008) (recognizing that the BIA has a duty to explicitly consider all evidence of country conditions in the record that materially bear on an asylum applicant's claim). (App. 1868.) While not believing that the documents Lin submitted necessarily spoke to the current country conditions (which would thereby implicate *Zheng*), the BIA found, nonetheless, that "remand of proceedings [was] warranted." *Id.*

On remand, Lin filed additional documentation and testified in support of her claim of fear of future persecution. Lin testified that she fears forcible sterilization because of her violation of the family planning policy requiring a person with one son to be sterilized.

Following a hearing, IJ Garcy denied all relief, finding that Lin failed to demonstrate that she held a well-founded fear of future persecution. While IJ Garcy found Lin to be credible, and applauded her efforts to authenticate documents from China, she ruled that Lin failed to show that her fear of sterilization was objectively reasonable because the documentary evidence of record was insufficient to meet her

burden. (App. 18.) Specifically, IJ Garcy found Lin's evidence regarding the family planning policy in her local township not to be entitled to much weight in considering a change in country conditions. The documents from the village committee and township family planning office had not been authenticated, nor were there other traditional markers of credibility, such as signatures of officials who might speak to their authenticity. All Lin provided was an affidavit from her mother certifying that she had collected those documents from the town officials.

On September 26, 2012, the BIA affirmed IJ Garcy's decision, and issued a final order dismissing her appeal. The BIA found that IJ Garcy properly reviewed the voluminous record and duly considered the evidence particular to Lin's case, including documents submitted from China. The BIA also affirmed IJ Garcy's strong reliance on publications issued by the Department of State, including the 2007 United States Department of State Profile of Asylum Claims and Country Conditions for China ("2007 Profile"). The BIA agreed with IJ Garcy's conclusion, based on the record evidence, that Lin had failed to distinguish her case from other precedential BIA decisions concluding that the use of physical coercion in carrying out China's family planning policy is "uncommon and unsanctioned by China's national laws," and that the policy is generally enforced through incentives and economic-based policies. *Matter of J-H-S-*, 24 I.&N. Dec. 196, 203 (B.I.A. 2007).

The instant petition for review was timely filed.

## II. Jurisdiction and Standard of Review

We have jurisdiction to review a final order of the BIA pursuant to 8 U.S.C. § 1252(a)(1). *Zhu v. Att'y Gen.*, 744 F.3d 268, 271 (3d Cir. 2014). Our review is of the BIA's decision, although we also review the IJ's decision to the extent that the BIA adopted or deferred to the IJ's analysis. *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005). Where, as in this instance, an alien seeking asylum does not allege past persecution, she must establish that she has a well-founded fear of future persecution. *See Chavarria v. Gonzalez*, 446 F.3d 508, 516 (3d Cir. 2006) (citing 8 U.S.C. § 1101(a)(42)).

To qualify for asylum, an applicant must demonstrate a subjective fear that persecution will result upon her return to her home country, and that fear must be "objectively reasonable in light of the circumstances of the alien's case." *Huang v. Att'y Gen.*, 620 F.3d 372, 381 (3d Cir. 2010). The term "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Among other things, a well-founded fear of persecution must be based on both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987). To establish eligibility for withholding of removal, an applicant must demonstrate "a clear probability of persecution." *See Fatin*, 12 F.3d at 1238 (quoting *INS v. Stevic*, 467 U.S. 407, 430 (1984)).

5

"So long as the BIA's decision is supported by 'reasonable, substantial, and probative evidence on the record considered as a whole,' we will not disturb the BIA's disposition of the case." *Chavarria*, 446 F.3d at 515 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

## III. Analysis

Lin argues that she met her burden by demonstrating a well-founded fear of future persecution, and the BIA's denial of her applications for relief should be reversed and remanded for a proper consideration of all of the evidence she has submitted. First, Lin posits that the BIA erred in affirming IJ Garcy's assignment of minimal weight to Lin's documents from China. Second, Lin contends that the BIA erred in affording greater weight to the 2007 Profile. Lin argues that such errors led to a mistaken finding by the BIA that Lin's violations of the family planning policy do not give rise to a well-founded fear of persecution. In support of her position, Lin submitted many documents, including opinion letters from her Township, affidavits from her husband and mother, expert statements about documents from China, as well as personal identification documents.

*Asylum*

Lin argues that several documents from her locality of Guantou Township should have been given greater consideration, including: 1) "Notification with regard to Tightening of this year's Implementation of Birth Control Measures;" 2) a statement of Guantou's family planning policy from the People's Government of Guantou Township called "Notification with regard to the Issues on Stepping Up the Implementation of the

6

Population and Family Planning Policy;" and 3) a Village Committee letter specifically threatening Lin with "injections, induction, sterilization and monetary fines" as a consequence of the birth of her two children and her then third pregnancy. (Appellant Br. 15.)

IJ Garcy explicitly discussed these documents and noted that, while "well-satisfied that [Lin] has attempted, through her attorney, to authentic [sic] information about the local birth policy of Guantou Town," IJ Garcy nonetheless afforded these documents minimal weight because they were unsigned and unsworn, obtained for the purpose of the hearing, failed to reference a specific local birth policy or law, and the writers were unavailable for cross-examination. (App. 19.) Lin argues that these documents do reference specific birth policies or laws, and that the BIA's and IJ's requirements that the documents must be signed and sworn in order to determine credibility, are contradicted by submissions from the Department of Homeland Security (which also are not sworn and signed). (Appellant Br. 17.)

"The BIA must provide sufficient analysis to demonstrate that it has truly performed a full review of the record, including the evidence that may support the alien's asylum claim." *Huang*, 620 F.3d at 388. Here, the BIA reviewed the above-mentioned documents, and concluded that "the evidence establishes no uniform policy regarding the implementation of the population control law with respect to children born outside China." (App. 5.) Further, the BIA approved IJ Garcy's decision to afford limited weight to the documents because of their unsigned and unsworn nature. IJ Garcy noted

7

Lin's attempts to authenticate the documents discussed above, but ultimately discounted them in her assessment because of the lack of indicia of credibility.

The BIA's and IJ's evaluation of such documents is supported by our Circuit's precedents. *See Chen v. Att'y Gen.*, 676 F.3d at 117 (finding that the IJ "properly discounted" Petitioner's "Village Committee document," which "has not been authenticated"). Unlike in *Huang*, where the BIA "discussed none of the evidence" (thereby warranting vacation of the final order of removal), *Huang*, 620 F.3d at 388; here, the BIA thoroughly discussed much of Lin's evidence and explained why the evidence did not support a well-founded fear of persecution. The BIA concluded that "even accepting a violation of the family planning policy of the respondent's home province, the evidence of record does not establish that such a violation would be punished in a way that would give rise to a well-founded fear of persecution." (App. 5.)

Lin also presented an affidavit from her husband that averred that if Lin was removed to China, the entire family would go with her back to Fujian Province. The BIA properly gave no weight to that statement, because Lin's husband was not made available for cross-examination.

Lin next argues that "[t]hrough its exclusive reliance on the State Department's 2007 Profile . . . the Board has created an impermissibly – and impossibly – high asylum standard for Lin to meet . . . ." (Appellant Br. 19.) To that end, Lin questions the reliance on a source that she posits is a "problematic source[]" because the findings are "temper[ed] . . . based on diplomatic considerations" and much of the information comes

from China which "has an obvious incentive to downplay [its] involvement in human rights violations." (*Id.* at 20-21.)

The BIA and IJ Garcy do indeed rely upon the 2007 Profile. The 2007 Profile, however, does not create any sort of "standard," as Lin contends. Rather, the 2007 Profile provides an overview on the country conditions of China, including a discussion of forced sterilization in China and Fujian Province in particular. *Chen v. Att'y Gen.*, 676 F.3d at 114-15. The BIA stated in its September 26, 2012 final order that it is appropriate for IJ Garcy to rely on such State Department Reports and Profiles as the "best resource for assessing country conditions." (App. 5.) The BIA cited to this Circuit's precedential opinions in *Chen* and *Zubeda* for the proposition that such State Department reports are reliable. *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir. 2003) (stating that country reports are the "most appropriate" and perhaps the "best resource" for determining country conditions).

The BIA is entitled to weigh and evaluate the evidence in the manner it deems appropriate. The BIA "may give whatever weight it deems appropriate to that evidence in light of all of the other evidence presented." *Zhu v. Att'y Gen.*, 744 F.3d 268, 275 (3d Cir. 2014). Indeed, such reliance upon the 2007 Profile is well-established in our Circuit. *See Chen v. Att'y Gen.*, 676 F.3d at 114 (affirming with approval the BIA's characterization of the 2007 Profile as "highly probative evidence"); *see also Yu v. Att'y Gen.*, 513 F.3d 346, 349 (3d Cir. 2008) ("This Court has repeatedly recognized that State Department reports may constitute substantial evidence.").

As stated earlier, we review the BIA's evidentiary rulings deferentially. *Cheng v. Att'y Gen.*, 623 F.3d 175, 182 (3d Cir. 2010). Under this deferential standard, we cannot say that the BIA abused its discretion in affording greater weight to the 2007 Profile, even as it considered all the evidence in the record including support for the criticisms of the 2007 Profile that Lin raised. (App. 5.) ("We hold that the Profile, an official published document of the [Department of State], is entitled to greater evidentiary weight than the Sapio report.").

After reviewing the evidence presented, we conclude that the evidence in the record does not provide a sufficient basis for overturning the conclusions reached by the BIA. *See Chen v. Ashcroft*, 376 F.3d at 223 ("[A]fter reviewing the record as a whole we are convinced that the record evidence does not compel us to reach a conclusion contrary to that of the IJ and the BIA."). In the instant case, the BIA and IJ Garcy considered all the evidence of country conditions presented in the record that materially bear on Lin's claims. Specifically, IJ Garcy noted that "[d]ocumentary evidence . . . has been carefully considered in coming to a decision in this case." (App. 20.) The BIA and IJ Garcy considered Lin's village documents, even if Lin disagrees with the weight accorded to them. They considered the 2007 Profile and determined that it constituted reliable evidence undermining Lin's position. In addition, they concluded that there was a dearth of sufficient evidence to show that Fujian Province's family planning policy would be applied to Lin despite the fact that her children were born in the United States. *Cf. Zheng*, 549 F.3d at 268-69 (finding abuse of discretion where the BIA did not mention

10

Petitioner's affidavits, city letters, or other documents submitted by Petitioner).

Given that the BIA considered all of the evidence in the record, together with IJ Garcy's determinations and conclusions, and explained its reasons for weighing and balancing the evidence as it did, we are not compelled to reach a conclusion contrary to that of either the IJ nor BIA. *Cf. Zhu*, 744 F.3d at 279 (remanding where, in denying a motion to reopen, the BIA failed to "meaningfully consider[] the evidence and arguments [Petitioner] presented" and failed to explain why the BIA rejected certain evidence). Therefore, it was permissible for the BIA to find that Lin failed to meet her burden of proof. *See, e.g.*, *Yu,* 513 F.3d at 349 (where "the BIA's explanation of why it decided to credit [State Department] reports" over evidence set forth by Petitioner was "well reasoned," it "necessarily follows that the BIA's resolution of this matter was supported by substantial evidence").

*Witholding of Removal and CAT Protection*

"The threshold for asylum is lower than for protection under the withholding of removal or CAT provisions . . . ." *Id.* Because Lin did not meet the standard for obtaining asylum, she also failed to satisfy the higher burden of proof required for CAT and withholding of removal under Section 241(b)(3) of the Act. *Zubeda*, 333 F.3d at 463; *see also Chen v. Att'y Gen.*, 676 F.3d at 117. Therefore, Lin's CAT and withholding claims were properly denied.

**III. Conclusion**

11

For the foregoing reasons, we will deny the petition for review and affirm the decision of the BIA.