[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13838
Non-Argument Calendar
_____

Agency No. A088-777-109

YUE ZHU QIU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 23, 2015)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Yue Zhu Qiu, a native and citizen of China, seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of her application for withholding of removal under the Immigration and Nationality Act ("INA") § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c).  Qiu's claims are based on her fear that she will be forcibly sterilized if returned to her hometown in Fujian Province because she violated China's family planning policy by having two children in the United States.  Qiu's petition for review argues that the BIA, in denying her claims, made impermissible appellate findings of fact and also failed to give consideration to her record evidence suggesting that her local family planning office has already determined that she must undergo sterilization when she returns.[1]  After review, we grant Qiu's petition as to her claim for withholding of removal and remand that claim to the BIA.[2]

---

[1]Qiu's brief to this Court does not challenge the denial of her asylum claim as untimely or the denial of her claims of withholding of removal based on either past persecution or future religious persecution.  Qui has abandoned these claims, and thus we deny her petition as to those claims.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  The only claims on appeal are Qiu's claims of withholding of removal under the INA and CAT based on her fear of future persecution and torture for violating China's family planning policy.

[2]We review only the BIA's decision except to the extent it explicitly agrees with the IJ's findings or relies upon the IJ's reasoning.  Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1153 (11th Cir. 2014).  We review legal questions de novo and factual determinations under the substantial evidence test.  Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1307 (11th Cir. 2013).

## I.  GENERAL PRINCIPLES

To be eligible for withholding of removal, an alien must show that her "life or freedom would be threatened in that country because of . . . race, religion, nationality, membership in a particular social group, or political opinion."  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  The alien "bears the burden of demonstrating that it is more likely than not she will be persecuted or tortured upon being returned to her country."  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quotation marks omitted); 8 C.F.R. § 208.16(b)(1)-(2).

Under the INA, forced abortion, involuntary sterilization, and persecution for resisting a coercive population control program constitute persecution on account of political opinion.  INA § 101(a)(42), 8 U.S.C. § 1101(a)(42).  To prove that the fear of forced sterilization is objectively reasonable, the BIA requires an alien to show: "(1) proof of the details of the family planning policy relevant to her; (2) [she] violated the policy; and (3) the violation of the family planning policy would be punished in the local area [in China] in a way that would give rise to an objective fear of future persecution."  Wu v. U.S. Att'y Gen. 745 F.3d 1140, 1155 (11th Cir. 2014) (quotation marks omitted and alteration adopted) (involving

an asylum claim and citing In re J-H-S-, 24 I. & N. Dec. 196 (BIA 2007), which formulated the three-part test).[3]

In future persecution cases, the likelihood of a future event occurring is a factual question, and whether a likely event constitutes a well-founded fear of persecution is a legal question. Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1311-12 (11th Cir. 2013). Thus, the likelihood that an alien will be forcibly sterilized if returned to China is a question of fact that must be found by the IJ. Id. at 1308-14. Because the BIA is prohibited from engaging in fact-finding, it must review the IJ's finding as to the likelihood of forced sterilization only for clear error and commits legal error when it reviews that finding de novo. Id.; see also 8 C.F.R. § 1003.1(d)(3). When the BIA mistakenly reviews the IJ's likelihood finding de novo and thus conducts impermissible fact-finding, we do not reach the question of whether the BIA's ultimate determination is supported by substantial evidence. Instead, we "remand for the BIA to determine in the first instance whether the IJ's factual findings were clearly erroneous" before the BIA answers the legal question of whether what is likely to happen rises to the level of persecution. See Zhu, 703 F.3d at 1315-16.

---

[3]On appeal, Qiu does not challenge the BIA's formulation of the three-part test or argue that this interpretation of the term "well-founded fear" in INA § 101(a)(42), 8 U.S.C. § 1101(a)(42), is unreasonable and thus not entitled to deference under Chevron, USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984).

In addition, the IJ and the BIA must consider all of the evidence presented and must give "reasoned consideration" to the petitioner's claims. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006). "In a reasoned-consideration inquiry, we look to see whether the BIA consider[ed] the issues raised and announce[d] [its] decision in terms sufficient to enable a reviewing court to perceive that [it has] heard and thought and not merely reacted." Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1299 (11th Cir. 2015) (quotation marks omitted). The "reasoned consideration" requirement does not mean the IJ and the BIA must discuss each piece of evidence in the record. Tan, 446 F.3d at 1374; Indrawati, 779 F.3d at 1302 ("[A] decision that omits the discussion of certain pieces of evidence can nonetheless display reasoned consideration."). However, "a remand is necessary when the record suggests that the Board failed to consider important evidence in that record." Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1367-69 (11th Cir. 2011) (quotation marks and alteration omitted) (explaining that both the IJ and the BIA relied upon general statistics about female genital mutilation in Senegal and "ignored" and failed to "discuss[ ] undisputed evidence of specific family conditions" indicating the petitioner and her daughter faced a greater risk in their rural village); Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350, 1355 (11th Cir. 2009) (explaining that the IJ and the BIA "did not discuss" evidence that Iranians who convert to Christianity practice underground to avoid discovery and

that the Iranian government already had a heightened interest in the petitioner that made it more likely the government would learn of the petitioner's conversion to Christianity).

## II.  QIU'S CLAIMS

### A.    Qiu's Individualized Evidence

Among other evidence, the record contains a January 2009 notice addressed to Qiu individually and purportedly issued by the Lianjiang County Xiao Ao Town Family Planning Office ("FPO") that states that all Chinese citizens who have two children are subject to sterilization and that Qiu is a Chinese citizen.  Moreover, the notice indicates, "For the question about if children born in United States will be considered as exceed[ing] birth in family planning polic[y], according to the regulations of Fujian Province Population and Family Planning Policy: China citizen gave birth to his/her children, if the children come back to China, they will be considered as same as China citizen" and "[i]f you come back [to] China and residence in China, after your children registered their household, the family planning policy will be applied on them as same as all local residence, no exception."

The record contains a second notice, dated May 3, 2010, also purportedly from the FPO, which states:

> We found the facts: gave birth to two children (exceed birth) According to <<Province Family Planning Regulation>> you should

6

> perform sterilization operation.  You have to come to Province Family Planning Office before <u>May 13, 2010</u> to perform sterilization operation.  If you pass due, you will be fined according to Section 32 1 of <<Fujian Province Family Planning Regulation>>.

(emphasis in original).  According to Qiu's hearing testimony, which the IJ fully credited, Qiu wrote to the FPO, and the FPO responded advising her that she would be sterilized and fined if she returned to China.  She also testified that the Chinese government would view her two children as Chinese citizens because they had traveled to China using Chinese travel documents.

In short, Qiu presented evidence that she received personal notice from her local FPO that she is in violation of Fujian Province's family planning regulations due to her two U.S.-born children and already has been ordered to appear for involuntary sterilization.

## B.    IJ's Findings

The IJ summarized Qiu's hearing testimony, noting among other things, that Qiu had testified that her mother and sister-in-law were both forcibly sterilized after giving birth to multiple children in China, and that Qiu believed she herself would be sterilized and fined if returned to China.  The IJ further noted that Qiu "testified that if she were removed to China, she would register her first-born child in her household registry but if she were to register the second child, she would be forcibly sterilized."  The IJ indicated that Qiu "pointed to Exhibit 5, tabs P and Q, in support of this proposition," but did not identify what these documents were,

7

what the content of the documents said, or discuss them at all.  In fact, these documents were the two notices from the local FPO.

The IJ found that "even assuming, arguendo, that [Qiu] had met the first two prongs [of the three-part test], she has failed to satisfy the third prong."  The IJ explained that Qiu had not distinguished her individual case from the BIA's published decisions in which the BIA had concluded that the record in those cases indicated China did not have a national policy of sterilizing returning Chinese parents of U.S citizen children, but instead penalized them with economic sanctions.  Citing the U.S. State Department's 2011 Country Report on Human Rights Practices in China ("2011 Country Report"), the IJ stated that "[s]poradic reports of forcible abortions and sterilizations, which are unauthorized under Chinese law however, are insufficient to establish a well-founded fear, to say nothing of showing that it is more likely than not that [Qiu] . . . would be subject to forced sterilization."  The IJ found that Qiu's general background evidence did not show that it was more likely than not that authorities in the Fujian province would forcibly sterilize Qiu individually as the result of her having multiple children in the United States.

The IJ noted Qiu's testimony that her mother and sister-in-law were forcibly sterilized, but stated that "neither of these cases is analogous to this case because those two people were in China, they had never left China, and their children

8

obviously were not born in the United States."  The IJ, however, made no mention of Qiu's testimony that she had received two notices from her local FPO that she personally was in violation of the family planning policy and that she must report for sterilization, and did not address what credibility or weight, if any, to give the two purported notices in the record at Exhibit 5, tabs P and Q.

## C.    The BIA's Decision

On appeal, the BIA affirmed the IJ's denial of withholding "upon de novo review."  The BIA summarized the three-part-test and "conclude[d] that [Qiu] did not demonstrate that she has violated a family planning policy in China as a result of having two children born in the United States," the second prong of that test. The BIA then "presume[d], as did the [IJ]," that Qiu would be deemed to be in violation of the policy, and concluded she did not demonstrate that she individually faces punishment rising to the level of persecution.  The BIA cited State Department reports, in particular the 2007 Profile of Asylum Claims and Country Conditions in China ("2007 Asylum Profile"), for the proposition that forcible sterilization in Fujian Province was "uncommon and not sanctioned by the Chinese government, which instead prefers incentives and economic penalties" when "Chinese nationals . . . register out-of-plan children."  The BIA, like the IJ, noted that Qiu "provide[d] evidence that her sister-in-law was sterilized and testified that her late mother was sterilized, [but] she is not similarly situated to these women

9

because their children were born in China and [Qiu's] children were born in the United States." The BIA, like the IJ before it, did not acknowledge Qiu's testimony or documentary evidence indicating that local FPO officials had already sent her two notices that she must be sterilized when she returns to Fujian Province because she had given birth to two children in the United States.

## D.    Qiu's Forced Sterilization Claim

The record indicates that the BIA reviewed the IJ's fact-findings <u>de novo</u>, rather than for clear error. The BIA specifically stated that it was reviewing the IJ's denial of withholding of removal <u>de novo</u>. The BIA then addressed whether Qiu was likely to face forcible sterilization, as opposed to fines or economic penalties, without stating that its review was for clear error. The BIA also found that Qiu had not established the second prong of the three-prong test—that she violated the relevant family planning policy—a fact the IJ explicitly did not find. Rather, the IJ assumed Qiu had satisfied the first two prongs of the test, and evaluated only what sanctions she was likely to face and whether they rose to the level of persecution. Making factual findings on <u>de novo</u> review, as opposed to reviewing the IJ's factual findings through the lens of clear error, constitutes legal error requiring a remand. See <u>Zhu</u>, 703 F.3d at 1305, 1314.

In addition, both the IJ and the BIA failed to address Qiu's evidence that local family planning officials in China already had found Qiu to be in violation of

10

the family planning policy and already ordered her to report for sterilization.  In denying Qiu's claims, the IJ and the BIA noted only that Qiu had submitted evidence that her mother and sister-in-law had been forcibly sterilized, but concluded that Qiu was not "similarly situated" to these women because Qiu's children were born in the United States, not in China.  The IJ and the BIA also noted that the background evidence in the record, including primarily the 2007 Asylum Profile, indicated that forced sterilization was prohibited by Chinese law, that unauthorized forced sterilizations were uncommon, and that Chinese citizens returning with children born outside of China were more likely to face economic sanctions than to be subjected to forced sterilization.

Although we have said that the IJ and the BIA are entitled to rely heavily on information in State Department reports, the use of such reports "cannot substitute for an analysis of the unique facts of each applicant's case."  See Wu v. U.S. Att'y Gen., 712 F.3d 486, 496-97 (11th Cir. 2013) (quotation marks omitted).  Apart from distinguishing Qiu's evidence about her mother's and sister-in-law's forced sterilizations, the IJ and the BIA did not address Qiu's individualized evidence or the two purported notices discussed above.

The failure of the IJ and the BIA to even mention this individualized evidence is especially concerning given that both the IJ and the BIA discounted as not similarly situated evidence that two of Qiu's relatives were forcibly sterilized

11

by local family planning officials in Fujian Province.  If credited, Qiu's documentary evidence arguably suggests that her local officials treat both Chinese-born and U.S.-born children of Chinese citizens the same for family planning purposes.  See Li v. U.S. Att'y Gen., 488 F.3d 1371, 1372-73, 1376 (11th Cir. 2007) (rejecting the BIA's distinction between foreign and Chinese-born children when there is no evidence in the record suggesting local officials will make such a distinction).  Moreover, the only other State Department report cited by the BIA, the 2011 Country Report, noted that, although national law prohibits the use of physical coercion to compel a person to submit to forced abortion or sterilization, intense pressure to meet birth limitation targets led to instances of local family planning officials using physical coercion to meet government goals.

Finally, Qiu submitted many background documents concerning China's family planning policy, including congressional reports, news articles, and other governmental documents, indicating that Chinese authorities in certain provinces, including Fujian, continued to use forced sterilization and forced abortion in some instances.  Many of these materials post-date the 2007 Asylum Profile heavily relied upon by the IJ and the BIA.  Further, Qiu submitted notices and responses to inquiries regarding the family planning policy from local FPOs, some from towns in Fujian Province dated after 2007, indicating that children born abroad who permanently returned to China would be counted for purposes of the policy.  The

failure to address this evidence, or even note that much of it postdates the 2007 Asylum Profile, further undermines the conclusion that the IJ and the BIA considered all of the evidence in Qiu's case.  See Tan, 446 F.3d at 1375-76. Because the IJ and the BIA failed to address important evidence bearing on Qiu's forced sterilization claims and thus did not issue a reasoned decision sufficient for our review, we must remand to the BIA.  See Seck, 663 F.3d at 1369.

Accordingly, we grant Qiu's petition, vacate the BIA's decision, and remand her withholding of removal claims to the BIA for further proceedings consistent with this opinion.  On remand, the IJ, as the factfinder, must resolve the conflict in the evidence as to whether local FPO officials are likely to count Qiu's U.S.-born children for family planning purposes and require Qiu to undergo sterilization if she returns to Fujian Province, giving reasoned consideration to Qiu's evidence on this point.  We note that in remanding, we express no opinion as to the merits of Qiu's claims.  See Indrawati, 779 F.3d at 1302 (explaining that this Court remands due to lack of reasoned consideration not because we have reviewed the BIA's decision and disagreed with the legal conclusions and factual findings, but rather because we are unable to review those legal conclusions and factual findings).

**PETITION GRANTED; VACATED AND REMANDED.**