**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3712

_____

SHAO CHEN,

Petitioner,

v.

THE ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No.:  A073-187-116)
Immigration Judge: Donald V. Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 25, 2017

Before: SMITH, Chief Judge, MCKEE and RENDELL, Circuit Judges

(Opinion Filed:  June 22, 2017)

OPINION[*]

**RENDELL**, <u>Circuit Judge</u>:

Shao He Chen, a Chinese native and citizen, was denied asylum in 1997. Thereafter, he remained in the United States and fathered three children. When he recently moved to reopen his immigration proceedings, the Board of Immigration Appeals ("Board") denied the motion. Chen appeals that ruling. Before the Board, Chen urged that because China enforces its family planning policy more aggressively today than it did when he originally applied for asylum in the 1990s, he would face persecution upon return to China for exceeding that country's birth quotas. Because the Board did not abuse its discretion in denying Chen's motion to reopen, we will uphold its ruling.

The Board will only grant a motion to reopen a case if (1) "the evidence sought to be offered is material, was not available, and could not have been discovered or presented at the time of the original hearing," and (2) "prima facie eligibility for . . . relief has been established." *INS v. Abudu*, 485 U.S. 94, 97–98 (1988) (internal quotation marks and citations omitted).

We review the Board's denial of a motion to reopen for abuse of discretion. *Filja v. Gonzales*, 447 F.3d 241, 258 (3d Cir. 2006).[1]  In conducting our review, we uphold the decision unless it was "arbitrary, irrational, or contrary to law." *See Jian Jian Guo v.*

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We have jurisdiction under 8 U.S.C. § 1252.

*Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004) (internal quotation marks and citation omitted). Factual determinations are upheld if "supported by reasonable, substantial and probative evidence." *See id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

Here, Chen has not borne the "heavy burden" required for the Board to reopen his case. *See Abudu*, 485 U.S. at 110. The Board found that Chen did not demonstrate materially changed conditions with respect to family planning enforcement in China between 1997, when Chen last appeared before an immigration judge, and 2015, when he filed his motion to reopen. The Board issued a reasoned opinion after reviewing all of the evidence, and did not abuse its discretion.

Nevertheless, Chen raises several—often scattered—arguments as to why we should set aside the Board's ruling. We address each in turn. First, Chen claims that the Board erred in taking administrative notice of the State Department's 2015 Country Report on Human Rights Conditions in China without providing him the ability to respond. Chen urges that this violates his due process rights. We disagree. The Board may take administrative notice of "the contents of official documents such as country condition reports prepared by the Department of State," *see Sheriff v. Att'y Gen.*, 587 F.3d 584, 591–92 (3d Cir. 2009) (quoting Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878, 54891 (Aug. 26, 2002)), all the more so here because Chen himself put the earlier state department reports at issue.

The BIA can hardly be faulted for considering a more current version of the same kind of evidence that Chen presented.[2]

Second, Chen argues that the Board relied on the 2015 China Country Report to make an improper assumption about the effect of China's family planning enforcement policy. The exact nature of this argument is unclear, but Chen appears to misunderstand the Board's reasoning. The Board did not, as Chen suggests, rely on the report to conclude that he has not violated China's family planning policy. Rather, the Board relied on the report to conclude that conditions in China with respect to family planning enforcement had not materially worsened since 1997. *See* AR 6.

Third, Chen faults the Board for the "limited weight" it gave to unsworn statements of individuals with foreign-born children who claimed they were persecuted after returning to Chen's native province from abroad. Chen asserts that discounting these unsworn statements was arbitrary and irrational, for three reasons. First, he takes issue with the Board for discounting the statements because they were unsworn and not subject to cross examination. He points out that none of the evidence he provided was "sworn to or available to cross-examination," Br. at 19, other than Chen's own statement, and queries why the personal statements were subject to differential treatment by the Board. The answer is clear: none of the other documents, except Chen's own testimony,

_____

[2] Chen's reliance on *Chhetry v. Dep't of Justice*, 490 F.3d 196 (2d Cir. 2007) is unavailing. That case observed that some circuits require an opportunity to respond where the Board's reliance on the administratively noticed facts is dispositive. *Id.* at 200. Here, the Board's decision was not based solely (or even primarily) upon the Country report.

was a personal statement. *See generally* AR 122–1328. Thus, the other documents, including news articles, reports, and a sworn expert opinion, do not present the same reliability concerns as personal statements that were essentially hearsay. As such, the Board rationally concluded that unsworn personal statements were entitled to less weight than other evidence. *See Fei Yan Zhu v. Att'y General U.S.*, 744 F.3d 268, 275 (3d Cir. 2014) (Board may give evidence "whatever weight it deems appropriate . . . in light of all the other evidence presented").

Next, Chen claims that the Board improperly relied on its adverse credibility finding at Chen's deportation hearing in the 1990's to contextualize the evidentiary value of the unsworn statements. The Board believed the personal statements were of "essentially unknown reliability, and given [Chen's] previous lack of candor in his deportation proceedings," they were of limited evidentiary worth. AR 5. We find no error in the Board's contextualization of the evidence. The Board was free to view the evidence in the record as a whole, and—as Chen himself notes—was obligated to do so. Br. at 20-21.

Relatedly, Chen proceeds to argue that the Board erred in assessing the value evidence individually, instead of as a whole. Br. at 20; *see Huang v. Att'y Gen. of U.S.*, 620 F.3d 372, 388 (3d Cir. 2010). Chen misinterprets the Board's analysis. When the Board said that some individual evidence was not "of sufficient evidentiary worth to support reopening [Chen's] proceedings," AR 5, it was not analyzing each piece of

5

evidence individually in a vacuum. Rather, it looked at the evidence as a whole and concluded that there was no reason to reopen Chen's case.[3]

Chen further avers that the Board did not give sufficient weight to documents submitted by aliens from Chen's native province in China. Here, Chen fails to present a cognizable argument.[4] He simply rejects as "utterly irrational," Br. at 23, the Board's finding that the cases he offered into evidence were dissimilar from his own. Chen does so without saying exactly how the Board erred. While he clearly disagrees with the Board, Chen has done nothing to convince us that the Board erred.[5]

---

[3] Throughout his brief, Chen takes individual words or phrases from the Board's opinion out of context and classifies them as legal error. Especially given our deferential standard of review, we decline to read legal error into the Board's decision.

[4] Chen seems to suggest (1) that we should read *Matter of J-H-S-*, 24 I. & N. Dec. 196 (B.I.A. 2007) to establish Board policy for how it weighs evidence, and (2) that the Board violated its policy by prioritizing evidence from the Petitioner's native county. Br. at 22. In *J-H-S*, the Board found that Petitioners could demonstrate eligibility for asylum if, among other things, they provide evidence that the births of their children "violated family planning polices in that alien's local province, municipality, *or other locally-defined area*." *Id.* at 197–98 (emphasis added). Perplexingly, Chen seems to argue that the use of the disjunctive "or" means that the Board must give evidence from anywhere in Chen's entire native province the same weight as evidence from his home county. Br. at 22–23.

Even setting aside that the phrase "locally-defined area" is ambiguous, Chen's argument fails. He excises the allegedly supportive language from a broader passage of *J-H-S-* that in fact emphasizes the fluidity of the Board's evidentiary assessment: an alien "*may* qualify as a refugee if the evidence presented establishes, *on a case-by-case basis*, that births violated family planning policies . . . and that current local family planning enforcement efforts would give rise a well-founded fear of persecution because of the violation." *Id.* at 197–98 (emphases added). *J-H-S-* clearly contemplated an individualized inquiry into many factors of an alien's case, beyond simple geography. The Board remained faithful to that precedent in evaluating Chen's motion.

[5] Even if the Board had taken all the personal statements at issue as true, they represented only "isolated instances of serious harm," AR 5, rather than materially changed circumstances.

Finally, Chen argues that the Board failed to "meaningfully consider" CECC reports and local enforcement campaigns. He claims the Board's treatment was "inadequate and merely cursory." Br. at 25. But as Chen acknowledges, the Board need not address every piece of evidence in the record. *See Huang*, 620 F.3d at 388. He does not cite with specificity evidence that the Board ignored or that would conclusively support his claims that conditions materially worsened, and our review does not reveal any evidence indicating that the Board's conclusion was incorrect or improper. Unlike cases where we have taken issue with the Board's analysis, *see Huang*, 620 F.3d at 388, the Board here conducted a plenary review of the evidence in the record.[6]

Because Chen has not demonstrated changed country conditions such that his case warranted reopening, we need not consider his *prima facie* eligibility for the relief sought. *See Abudu*, 485 U.S. at 97–98. And because the Board did not abuse its discretion, we will uphold its ruling.

---

[6] This case is not like *Zhu*, 744 F.3d at 268. There, we were concerned with the Board's "perfunctory" treatment of evidence, *id.* at 278 (citation omitted), and that the Board did not "meaningfully address" evidence such that cogent review was possible, *id.* at 279. Here, the Board cited significant evidence of longstanding family planning policies in Chen's native Fujian Province. AR 6. Chen presented the Board with a voluminous record, but he is unable to cite specific probative evidence that the Board ignored. Accordingly, we find no difficulty in this case in "perceiv[ing] that [the Board] has heard and thought and not merely reacted." *Zhu*, 744 F.3d at 278 (internal quotation marks and citation omitted).